■ VINCENT KEHOE, as General Guardian of CHARLES KEHOE, an Infant, et al., Respondents, v. INCORPORATED VILLAGE OF VALLEY STREAM et al., Defendants, and COUNTY OF NASSAU, Appellant.— In a negligence action to recover damages for personal injuries of the infant plaintiff and for medical expenses, etc., of his father, defendant County of Nassau appeals from an interlocutory judgment of the Supreme Court, Nassau County, dated April 15, 1971, against it and in favor of plaintiffs upon the issue of liability, upon a jury verdict, after a trial limited to that issue. Interlocutory judgment affirmed, with costs. No opinion. Munder, Acting P. J., Shapiro and Gulotta, JJ., concur; Brennan, J., dissents and votes to reverse the interlocutory judgment and dismiss the complaint, with the following memorandum: On May 5, 1962 the infant plaintiff, Charles Kehoe, then aged 9, together with his older brother, Vincent, then aged 12, and a friend visited Mill Pond Park in Valley Stream, Long Island. The park was located east of a Nassau County road known as Mill Road which runs north and south. The City of New York was the title owner of the Mill

Pond Park property. The Village of Valley Stream maintained the park and a pond therein known as Watts Pond, under an easement granted in 1951 by the owner, the City of New York. Watts Pond is joined by a culvert which runs under Mill Road to a stream called Mill Pond which lies to the west of Mill Road. After the boys had fished in Watts Pond on the park property, they decided to fish for eels in the Mill Pond stream. With their fishing net they crossed Mill Road from east to west by going through a 20-foot-wide culvert under Mill Road. They testified that after passing through the culvert they took up positions — the infant plaintiff on the south side of the stream and his brother Vincent on the north side of the stream — about 6 to 10 feet apart. After watching some eels in the water for about five minutes, the infant plaintiff asked his brother for the net. At this time the infant was standing on a slippery rock covered with moss three feet outside the west end of the culvert on the south shore of the stream, nearer to the south wall of the culvert than to the north wall. He could not reach the net handed to him by his brother. In order to get it he first stepped onto another slippery rock which protruded a few inches out of the water, which was at a six-inch level, and then stepped on a broken concrete drainage pipe, about three to four feet in diameter, which extended several inches above the water. When he stepped on the pipe he slipped and fell into the water striking a broken and jagged portion of the pipe and cutting his hand. The broken pipe was located "just outside of the culvert" — "not more than six inches away from the opening of the culvert." The action was commenced against appellant, the County of Nassau, and against the Village of Valley Stream, the Town of Hempstead, Green Acres Homes, Inc. and the City of New York upon the theory that one or more of them owned, maintained or controlled the area where the accident occurred. At the trial of the issue of liability, the action was discontinued as to defendant Green Acres and the trial court dismissed the complaint as to all other defendants, except the County of Nassau. The evidence disclosed that in 1931 the City of New York granted to the County of Nassau a permanent surface easement 60 feet wide for the purpose of establishing Mill Road, but retained title to the land itself. As indicated, the culvert ran underneath Mill Road from east to west. The trial court submitted the following question to the jury: "Was the drain pipe on which plaintiff slipped located in the stream within or outside the boundaries of the County's 60-foot strip of land?" The jury returned a 10-2 verdict in favor of plaintiffs, making the specific finding that the drainage pipe on which the infant plaintiff stepped was located in the stream within the boundaries of the county's 60-foot strip of land. In my opinion, plaintiffs did not sustain the burden of establishing by a preponderance of the evidence that the County of Nassau either owned or (as a beneficiary of the road easement) controlled the land at the site of the accident. There was considerable confusion at the trial as to whether or not there was a 10-foot wide unused portion of the 60-foot road easement and, if so, as to whether it was located to the east or west of Mill Road. In my opinion, the only relevant evidence in this respect was the testimony of Murray, the county's Principal Civil Engineer for the Division of Highways and General Engineering. Murray testified that Mill Road was about 60 feet wide in 1962. This unrefuted evidence negated any assumption that there was an unused portion of the 60-foot road easement which extended 10 feet beyond the west abutment wall of the culvert. Accordingly, there was no basis in the evidence for the specific question given by the court to the jury and the jury's finding was without foundation in the evidence. In this circumstance, the county's liability may not be grounded upon any purported status as "a land owner" or one in control of any unused portion of the 60-foot wide road easement. Nor

do I think that this record is sufficient to warrant a finding imposing liability upon the County of Nassau upon the theory of improper maintenance for failure to discover and remove the broken drainage pipe. On this issue plaintiffs relied mainly upon the testimony of Frank S. Nicoll, the county's Deputy Commissioner of Public Works. In substance, he testified that the county maintained some culverts that exist under county roads, but he could not find the record for the particular culvert under Mill Road; nor did he have records to show that the subject culvert was ever maintained by the county. He testified that the maintenance of the inside of the culvert was his department's responsibility, that "anything that is enclosed is mine" and that if there was broken pipe within the limits of his department's responsibility the personnel of his department would remove it. In an apparent effort to extend the county's responsibility for maintenance outside the actual terminus of the culvert, plaintiffs' attorney asked Mr. Nicoll the following question and received the following answer: "Q. Mr. Nicoll, if there was broken drainage pipe laying approximately four to eight inches to the west of the culvert, in other words, if you drew, from the top of the culvert, a line down to the ground and this pipe was laying from four to eight inches to the west of that line, would your men remove that? A. I would say, yes." However, on cross-examination he was asked the following questions and gave the following answers: "Q. If you walk through the culvert and stepped outside of it, with the sky now above you, and if there was something on the ground there — in the water, I should say — do you keep walking along picking up stuff? A. No. Q. If you did, would it be part of your maintenance program or just a gratuitous act on your part? A. Gratuitous." In my view, this speculative and unconvincing evidence was wholly lacking in the probative force necessary to establish a duty of maintenance on the part of the County of Nassau. In the light of my conclusion, I do not reach the question as to whether the infant's status was that of a trespasser, invitee or bare licensee while traversing through and while in the culvert. Martuscello, J., concurs in the dissenting memorandum by Brennan, J., and votes to reverse the interlocutory judgment and dismiss the complaint for the additional reasons set forth in the following memorandum: The Trial Justice in this case charged the jury that the infant plaintiff was, as a matter of law, either a trespasser or a licensee. The jury was then charged that if the broken pipe, on which the infant plaintiff slipped and fell, was on Nassau County's property, there still had to be proof, inter alia, that the county, through its employees, had actual knowledge of the existence of the dangerous condition created by the broken pipe, before a prima facie case was established. If the jury found that the broken pipe was outside of county property they were charged that a verdict against the county could be predicated only on their finding that the County of Nassau was responsible for the existence of the broken pipe at the site of the accident. A review of all the testimony and exhibits adduced in this case leads me to conclude that there is no proof which shows ownership or control in the County of Nassau of the land on which the accident occurred, or that the county had actual or even constructive knowledge of the existence of the alleged dangerous condition, assuming arguendo the afore-mentioned ownership or control was proved. Nor do I find any proof which tends to show that the county was responsible for the existence of the broken pipe at the site of the accident, assuming arguendo that such site was not on county land. In sum, in the complete absence of proof as to crucial elements of plaintiffs' causes of action, the jury, in the case, was left to simply speculate.